Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission adopts with minor modifications the Decision and Order of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and by post hearing agreement as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction of the parties and the subject matter.
2. All parties have been correctly designated and there is no question as to misjoinder or non joinder of parties.
3. There are no third party defendants or cross claimants.
4. Paul Sanford Gwyn was an inmate in Eastern Correctional Institution on 8 August 1994.
5. Eastern Correctional Institution is a correctional institution for which the North Carolina Department of Correction is directly responsible.
6. James David Rich was an inmate in Eastern Correctional Institution on 8 August 1994.
7. On 8 August 1994, James David Rich stabbed Paul Sanford Gwyn while both were in the exercise yard of Eastern Correctional Institution.
8. Paul Sanford Gwyn sustained two stab wounds, one on the right side of his back and another on the left side of his back.
9. Paul Sanford Gwyn died as a result of blood loss caused by the two stab wounds.
10. A set of records consisting on 1026 pages, received by the Industrial Commission on 31 July 1998, is admitted into evidence.
11. The transcript of James David Richs 15 November 1996 deposition, marked as Stipulated Exhibit Number One, is admitted into evidence.
12. The Death Certificate for Paul Sanford Gwyn, marked as Stipulated Exhibit Number Two, is admitted into evidence.
13. A Report of Investigation by Medical Examiner, marked as Stipulated Exhibit Number Three, is admitted into evidence.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. In August 1994, defendant held more than five hundred inmates in Eastern Correctional Institution. Ninety-five percent of the inmates were incarcerated for committing criminal offenses that involved violence against other persons. The inmates commonly threatened one another as a method of gaining respect amongst the inmate population. Approximately sixty percent of the inmate population had committed assaults against other inmates during the period of their incarceration.
2. Plaintiffs decedent had been convicted of numerous crimes prior to his conviction for first degree rape, for which he was incarcerated by defendant in 1994. James David Rich was incarcerated and serving a life sentence for murder.
3. During his incarceration, James David Rich was diagnosed as having numerous psychological or psychiatric conditions, including mixed personality disorder and bi-polar disorder with psychotic features. Mr. Rich regularly received counseling and medications for his mental condition. During his incarceration, Mr. Rich committed more than one assault against other inmates. He also had a history of engaging in behaviors that were designed to manipulate defendant to transfer him among defendants various correctional facilities. He also attempted to manipulate defendants medical staff in order to obtain prescription medications.
4. Mr. Rich was transferred to Eastern Correctional Institution approximately five weeks prior to 8 August 1994. Defendant held Mr. Rich in maximum custody. Upon his arrival, Mr. Rich was assigned to participate in a mandatory school program provided by defendant to its Eastern Correctional Institution inmates. Mr. Rich was unhappy and disagreed with his assignment to the program. He was also unhappy with his transfer to Eastern Correctional Institution and desired to be transferred to another facility.
5. During his incarceration at Eastern Correction Institution, Mr. Rich made repeated requests to be transferred to another facility. Defendants employees declined Mr. Richs requests.
6. Mr. Rich failed to attend the school program as directed by defendants employees. According to defendants policies, Mr. Richs failure to attend the program may have subjected him to disciplinary action, including segregation from the general inmate population. Whether to discipline Mr. Rich for his misbehavior was a decision that rested in the discretion of defendants administrative employees.
7. On at least three occasions, Mr. Rich stated to defendants employees that if defendant did not transfer him to another facility "it was going to be a mess like they had never seen down there before. Mr. Rich did not make any specific threat against any person or thing. He did not identify what he might do to cause a "mess. He did not name or otherwise relate his general threat to plaintiffs decedent.
8. Defendants employees did not segregate Mr. Rich from the general population prior to 8 August 1994.
9. At sometime after his arrival at Eastern Correctional Institution, Mr. Rich purchased a homemade knife from another inmate. After obtaining the knife, Mr. Rich concealed the weapon on the recreation yard by burying it in he ground. He did not keep the weapon on his person or in his prison cell.
10. Defendants employees knew that inmates regularly attempted to manufacture weapons for use against other inmates. Defendants employees knew that inmates concealed these weapons in a number of places, including the recreation yard and in bed mattresses. Defendants employees regularly conducted random, thorough searches of inmates persons, possessions and prison cells in an effort to discover and confiscate any weapon in the inmates possession. Defendants employees conducted daily visual searches of the recreation yard. They also conducted periodic searches of the recreation yard using metal detecting devices.
11. Prior to 8 August 1994, Mr. Rich had never spoken to or met plaintiffs decedent. He never threatened plaintiffs decedent or otherwise indicated that he intended to harm him. On or about 4 August 1994, Mr. Rich told one or more inmates that he intended to murder someone. One inmate suggested that Mr. Rich murder plaintiffs decedent because he was a "rat, a "child molester, a "punk and a "homosexual. Thereafter, Mr. Rich began keeping account of plaintiffs decedents whereabouts during times that they were allowed onto the recreation yard.
12. On 8 August 1994, Mr. Rich observed plaintiffs decedent alone on the recreation yard. With his knife concealed, Mr. Rich approached plaintiffs decedent, representing to him that he was interested in his wristwatch. Mr. Rich walked beside plaintiffs decedent as he proceeded to walk along a track. Continuing to discuss plaintiffs decedents watch, Mr. Rich slowed his pace, removed his knife from behind his back and twice stabbed plaintiffs decedent in the back. The two stab wounds caused plaintiffs decedents death later the same day.
13. None of the correctional officers on duty observed the assault. The officers did hear decedents yell and observed him attempting to flee from Mr. Rich. The officers also observed Mr. Rich attempting to flee from the recreation yard carrying his homemade knife. In accordance with defendants emergency procedures, the officers immediately activated a "code yellow alert and were able to apprehend and disarm Mr. Rich before he was able to leave the recreation yard.
14. Defendants employees promptly attempted to render aid to plaintiffs decedent. Emergency rescue personnel were promptly summoned to the prison and transported plaintiff to the nearest, appropriate medical facility.
15. Prior to 8 August 1994, Mr. Rich did not assault or threaten to assault anyone at Eastern Correctional Institution.
16. The correctional officers on duty at the time of the 8 August 1994 incident acted reasonably in their efforts to terminate the assault and render assistance to plaintiffs decedent. If defendants employees had observed Mr. Rich at the time he began stabbing plaintiffs decedent, they would have been unable to prevent him from inflicting the fatal stab wounds. Defendants employees inability to prevent the assault was not due to any failure to exercise reasonable care in the performance of their duties.
17. On or before 8 August 1994, the North Carolina Department of Correction possessed records revealing Mr. Richs impaired mental condition and his history of assaultive conduct. Eastern Carolina Correctional Institution received these records upon Mr. Richs transfer to that facility, and the "ICC recommended that he be observed at Eastern Carolina Correctional Institution for at least the first 90 days of his incarceration there. The undersigned find that on the basis of these records, defendant knew or should have reasonably known that there was a possibility that Mr. Rich would continue his assaultive conduct while at Eastern Carolina Correctional Institution. However, defendants employees did not know and reasonably could not have known that Mr. Rich possessed a homemade knife and would use a knife in an assault upon another inmate, or specifically that the inmate would be plaintiffs decedent. Further, defendants employees did not know and reasonably could not have known that Mr. Rich intended to murder plaintiffs decedent.
18. The undersigned note that although defendant provided records of Mr. Richs day-to-day actions following the 8 August 1994 incident, no records of his activities prior to the assault and while he was being "observed have been provided to the Commission or to plaintiff, even though such records were requested through discovery.
19. Defendants employees exercised reasonable care to insure that inmates did not possess weapons or conceal weapons on the recreation yard.
20. Notwithstanding Mr. Richs refusal to attend the school program and his general, vague threat to cause a "mess if not transferred to another facility, defendants employees acted reasonably when they decided not to segregate Mr. Rich from the general inmate population.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Defendants employees breached no duty of care owed to plaintiffs decedent.
2. The death of plaintiffs decedent was not proximately caused by the negligence of defendants employees.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, plaintiffs claim must be and the same is hereby, DISMISSED.
2. Each party shall bear its own costs.
This the ___ day of August, 2000.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER